IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| ROBERTA IMOGENE JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:13-CV-156 (WLS) |
| | : | |
| GRADY COUNTY, GEORGIA, and | : | |
| JUDGE J. WILLIAM BASS SR., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

The above-captioned putative class action suit, brought under 42 U.S.C. § 1983, alleges violations of the Due Process and Takings Clauses of the United States Constitution. (Doc. 1 at 16 & 18.) The suit also purports to assert claims for violations of the Georgia Constitution and other state law statutes and doctrines. (*Id.* at 19.) The complaint alleges that Grady County State Court Judge J. William Bass Sr. caused the State Court to unlawfully collect an "administrative cost" from the named Plaintiff and putative class members. (*Id.* at ¶ 2.) Allegedly, the funds were then deposited into the Grady County Treasury by Grady County officials. (*Id.* at ¶ 14.) Defendants Grady County and Judge J. William Bass Sr. have filed motions to dismiss the referenced complaint. (Docs. 4 & 9.) For the reasons that follow, Grady County's Motion to Dismiss (Doc. 4) is **GRANTED-IN-PART and DENIED-IN-PART** and Bass' Motion to Dismiss (Doc. 9) is **DENIED.** Also, Plaintiff's Motion to Exclude Affidavits from Consideration (Doc. 32) is **GRANTED.**

## FACTUAL BACKGROUND[1]

The State Court of Grady County is located in Cairo, Georgia, and has jurisdiction over misdemeanor criminal cases. (Doc. 1 at ¶ 20.) Since 2002, Defendant Judge J. William

---

[1] For the purposes of the motions to dismiss, the Court must accept all well-pleaded allegations in Jones' complaint as true. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (citing *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)).

Bass Sr. ("Bass"), a resident of Grady County, Georgia, has presided over the State Court of Grady County. (*Id.* at ¶¶ 15 & 20.) Bass is directly responsible for the daily management, administration, and operation of that court. (*Id.* at ¶ 15.) Shortly after his election to the bench, Bass devised a plan to use the Grady County State Court to collect additional funds for Defendant Grady County ("Grady County" or "the County"). (*Id.* at ¶ 21.) To that end, Bass unlawfully required State Court defendants to pay "administrative costs" in addition to statutorily authorized fines and surcharges.[2] (*Id.*) In many cases, the administrative cost totaled $700-$800 per defendant, and most defendants who appeared before Bass were required to pay some amount in such costs. (*Id.* at ¶¶ 21 & 22.) Between July 2011 and July 2012, about 540 State Court defendants paid administrative costs totaling approximately $296,711.00. (*Id.* at ¶ 22.) The average of such cost for that period was $613.00. (*Id.*) Bass charged those costs for at least seven years. (*Id.* at ¶ 2.) Grady County received the funds collected by Bass and the Grady County State Court from the named Plaintiff and other putative class members, and County officials deposited the same into the County treasury. (*Id.* at ¶ 14.) At a minimum, Grady County knowingly acquiesced to Bass' policy of charging Grady County State Court defendants administrative costs. (*Id.*)

Bass caused the State Court of Grady County to create a special system to facilitate the collection of the referenced costs. (*Id.* at ¶ 24.) Bass revised the State Court's then-existing sentencing disposition forms by adding a category for the administrative costs. (*Id.*) That category was distinct from the category for punitive fines. (*Id.*) When entering the administrative costs into the State Court's computer system, the court's clerks categorized the costs as "restitution." (*Id.*) That designation caused the referenced costs to be disbursed to Grady County before they were disbursed to the State of Georgia. (*Id.*)

Bass charged administrative costs to raise revenue for the County and to provide a basis for an increase in his own personal salary. (*Id.* at ¶ 25.) In July 2012, Bass delivered a document to the county governing authority requesting an annual salary increase from $40,000 to $60,000. (*Id.* at ¶ 26; *see* Doc. 1-2 at 1.) That letter stated as follows:

> I need my salary raised to $60,000 per year.

---

[2] The Parties do not dispute that the "administrative costs" were not authorized by law.

> Why should you do it?
>
> 1. My 'total compensation' is about $40,000 of salary and $15,000 of insurance. I don't take the insurance, ***but it's still part of my compensation, and, by law, that can't be lowered while I am in office.*** So, raising my salary to $60,000 won't cost the county one red cent, considering that the county hasn't had the expense of furnishing my insurance for several years (and won't have to do so for the next two years).
>
> 2. I've never asked for any kind of raise. Although this is a part time [sic] job, it requires my attention on a full time [sic] basis. And, because people don't think that judges can practice law, it's simply hard to earn a living.
>
> 3. This court, because of the extra time and energy that I spend, contributes more than $350,000 per year to the county. Although I don't get concerned about 'raising money for the county', [sic] I work hard to maximize what get's [sic] turned over. At $40,000 per year, the next judge will not be able, or willing, to do that. The judge must go beyond the call of the job to produce that much for the county. To keep the income at that standard, the judge has got to be able to devote the time and energy required.
>
> 4. I also fill in for the Probate Judge when she is out of town, and, [sic] I've helped the Magistrate Court whenever I am asked…all of this at no charge to the county.
>
> I am *your* State Court judge. I want to be able to continue to make it perform for the county as it should. ***I wouldn't ask you to do this,*** [sic] ***if I saw any alternative.*** Remember, the performance of this court isn't an accident…I don't cry "Wolf!"…I humbly ask for your support in this matter.

(Doc. 1-2 at 1) (emphasis in original.) Plaintiff Roberta Imogene Jones ("Jones") is a resident of Statesboro, Georgia. (Doc. 1 at ¶ 13.) She works night shifts at a poultry processing plant. (*Id.*) On July 9, 2012, Jones pleaded guilty to Driving Under the Influence, First Offense, in Grady County State Court. (*Id.*) Because she could not afford a lawyer, she appeared before Bass without counsel. (*Id.*) Bass sentenced Jones to one year of probation at a cost of $44 per month and imposed a fine of $300. (*Id.*) Those costs and fees were stated to "includ[e] all surcharges and add-ons." (*Id.*) Bass also ordered Jones to pay Grady County $700 in administrative costs. (*Id.*) Jones paid all fines, costs, and charges related to her case. (*Id.* at ¶ 29.)

On December 14, 2012, the Judicial Qualifications Commission ("JQC") filed a Notice of Formal Proceedings against Bass, charging him with violations of the law and Code

3

of Judicial Conduct. (*Id.* at ¶ 30.) As to the collection of administrative costs, the JQC charged Bass as follows:

> A. You violated Canon 2A ("judges shall respect and comply with the law") and/or Canon 3B ("judges should be faithful to the law") of the Code of Judicial Conduct when you, without legal authority, ordered the collection of funds as "Administrative Costs" from criminal defendants.
>
> B. You violated Canon 2B ("judges shall not lend the prestige of judicial office to advance their private interests") and/or Canon 2A ("judges shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary") of the Code of Judicial Conduct when you wrote and, on or about July 3, 2012, delivered a document to the county governing authority requesting a salary increase. . . This document gave the appearance that your salary increase was warranted by the amount of funds you caused to be improperly collected by State Court.
>
> C. You violated Canon 2A ("judges shall respect and comply with the law") and O.C.G.A. § 16-10-1 (Oath of Office), when you illegally charged costs and exacted payment from defendants, without legal authority, for the benefit of the county and you, as the State Court Judge of Grady County, in order to "maximize" the collection of revenue which the county was not otherwise entitled to receive from defendants.

(Doc. 1-4 at 2-3.) On March 6, 2013, the JQC held an ethics trial on the referenced charges. (Doc. 1 at ¶ 32.) After the trial, pursuant to an "agreed upon disposition of the investigation by the [JQC]," the JQC issued a Public Reprimand to Bass. (*Id.* at ¶ 33.) As to Bass' collection of administrative costs, the Public Reprimand stated as follows:

> You have admitted that without any legal authority, you ordered the collection of funds, which you called, "Administrative Costs" from criminal defendants and illegally charged those costs and exacted payment from defendants in what appeared to be an effort to "maximize" the collection of revenue which the county was not entitled to receive.

(Doc. 1-3 at 1-2.) After receiving the Public Reprimand, Bass again sought to impose unauthorized fees on criminal defendants as recently as August 2013. (Doc. 1 at ¶ 34.)

4

## ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. When reviewing a Rule 12(b)(6) motion, the Court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.' " *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.' " *Id.* at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

    I.    **Grady County**

        A.  **Federal claims**

            i.    **Grady County's liability under § 1983**

First, Grady County argues that it cannot be held liable for Bass' actions under § 1983 through respondeat superior. (Doc. 5 at 4.) In response, Jones states that her complaint does not purport to assert a § 1983 respondeat superior claim against Grady County. (Doc. 20 at 3-6.) She states that, instead, her complaint alleges that the County is directly liable for its own unconstitutional acts. (*Id.*) In reply, the County acknowledges that it can be held liable if it had a "policy or custom [that] is a cause of the deprivation of a plaintiff's federal right," but states that "the facts do not support Plaintiff's contention." (Doc. 26 at 2-3.) In support of that statement, the County submitted two affidavits and a contract. (*See* Docs. 27 & 28.) Jones filed a Motion to Exclude Affidavits from Consideration and therein states that Grady County's Motion to Dismiss should be decided on the complaint alone. (Doc. 32.)

"In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."

*SFM Holdings, Ltd. v. Bank of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Day v. Taylor* 400 F.3d 1272, 1276 (11th Cir. 2005)). Grady County asserts that the affidavits should be considered at this stage because "*the information contained in the affidavits* is central to Plaintiff's claims." (Doc. 34 at 4 (emphasis supplied).) The information contained in the documents is not what must be central to the plaintiff's claim; it is *the documents* themselves whose centrality is of import. *See Day*, 400 F.3d at 1276 ("references to the dealership contract are a necessary part of [the plaintiff's] effort to make out a claim"); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) (finding purchase agreement central to plaintiff's claims involving dispute over that agreement). Grady County does not argue that the affidavits are central to Jones' claims. Therefore, considering the referenced extrinsic documents at this stage would be inappropriate without converting the motion to dismiss into a motion for summary judgment. Grady County stated no reasons as to why the Court should convert the instant motion into a motion for summary judgment. (*See* Doc. 34.) For that reason, the Court declines to take that action. As such, Jones' Motion to Exclude Affidavits from Consideration (Doc. 32) is **GRANTED.**

The complaint purports to state a claim against Grady County for its own direct actions, which the Parties agree is the appropriate way to seek to hold the County liable for its allegedly unconstitutional acts. Because Grady County does not argue that its direct actions cannot give rise to a constitutional claim against it, the Court construes the Parties to agree that Jones has properly asserted a claim against Grady County for violations of the Due Process and Takings Clauses of the U.S. Constitution. For that reason, Grady County's first ground for dismissal in its motion to dismiss (Docs. 4 & 5) is **DENIED.**

### ii. Availability of a postdeprivation remedy

Second, Grady County argues that it cannot be held liable for a procedural due process violation in this matter because a state law conversion action is an adequate postdeprivation remedy. (Doc. 5 at 8-9.) Jones asserts that the availability of a postdeprivation remedy is irrelevant because the conduct challenged was not "random" and "unauthorized." (Doc. 20 at 6-7.) The Court agrees with Jones that "the availability of a state tort action is irrelevant to a claim for deprivation of a protected interest which is carried out by persons

acting under color of state law pursuant to an established procedure where predeprivation process is feasible." *Messick v. Leavins*, 811 F.2d 1439, 1441 (11th Cir. 1987).  In other words, a post-deprivation remedy does not bar a procedural due process claim where the alleged deprivation was pursuant to an "established state procedure and 'process' could be offered before any actual deprivation took place." *Gilmere v. City of Atlanta*, 737 F.2d 894, 906 (11th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).

Here, the complaint alleges that Grady County engaged in an established practice or procedure of collecting and spending funds that were obtained without legal authority.  (*See* Doc. 1 at ¶ 14.)  Prior to collecting administrative costs, Bass could have permitted State Court defendants to challenge the lawfulness of the administrative costs.  As such, the Court finds that the complaint properly alleges that Grady County was acting pursuant to an established state procedure and predeprivation process was feasible.  For those reasons, the availability of a state tort action is irrelevant and Grady County's second ground for dismissal in its motion to dismiss (Docs. 4 & 5) is **DENIED.**

### iii. Ripeness of the takings claim

Third, Grady County argues that Jones' takings claim is not ripe for review because exhaustion of Georgia's inverse condemnation procedure is a condition precedent to such claim. (Doc. 5 at 11.)  Jones states that her takings claim is ripe because the referenced procedure is not a reasonable, certain, and adequate procedure to recover her property in this case. (Doc. 20 at 10.)  Further, Jones argues that the exhaustion requirement generally applicable to takings claims does not apply here because resort to the suggested procedure would be absurd under the circumstances of this case. (*Id.*)

"[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985).  Under Georgia law, "[t]he right of a property owner to recover against a governmental entity for damage to his property caused by public improvements is . . . implied from the self-executing constitutional provision . . . that 'private property shall not be damaged for public purposes without just and adequate

compensation being paid.' " *Adams v. City of Atlanta*, 322 S.E.2d 730, 732 (Ga. 1984) (quoting *Fulton Cnty. v. Baranan*, 242 S.E.2d 617 (Ga. 1978)). Though the cases addressing Georgia's inverse condemnation procedure deal mostly with land, *see, e.g.*, *id.* at 732, that procedure applies to takings of personal property. *See Howard v. Gourmet Concepts Int'l, Inc.*, 529 S.E.2d 406, 410 (Ga. Ct. App. 2000) (citations omitted). Grady County did not cite, nor could the Court find, any case involving the referenced procedure and a taking of currency.

Assuming aggrieved citizens may resort to Georgia's inverse condemnation procedure for takings of currency, the Court nonetheless finds that resort to that procedure was not necessary in this case. For federal takings, a suit for money damages under the Tucker Act must be brought in the Court of Federal Claims before it may be brought in district court. *See Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 401 (D.C. Cir. 1997) (citing 28 U.S.C. § 1491). However, where a federal statute requires people to pay money to the government, aggrieved individuals need not first file suit under the Tucker Act. *See In re Chateaugay Corp.*, 53 F.3d 478, 493 (2d Cir. 1995). Where Congress demonstrates a clear intent to take money from citizens, "it would make no sense to presume that [it also] intended for the Treasury to compensate" the aggrieved citizens. *Id.* "Every dollar paid pursuant to a statute would be presumed to generate a dollar of Tucker Act compensation" because the fair market value of currency is the face value of the currency. *Id.*

For the same reasons discussed above regarding federal takings of money, it would be nonsensical to require aggrieved citizens to resort to Georgia's inverse condemnation procedure for state or municipal takings of money. Like the Tucker Act, Georgia's inverse condemnation procedure is an avenue for an aggrieved citizen to seek the fair market value of the property taken by the government. *See Housing Auth. of Atlanta v. Troncalli*, 142 S.E.2d 93, 93-94 (Ga. Ct. App. 1965). That procedure is not an avenue for individuals to seek to have seized property returned. *Id.* Seeking fair market value for money is the same as seeking to have the money returned. Grady County's policy of collecting money from State Court defendants indicates that the County had no intention to provide compensation therefor. Because Grady County demonstrated a clear intent to keep the money, resort to the inverse condemnation procedure in this case would have been a meaningless task. As such, the

8

Court finds that Jones' takings claim is ripe for review. Accordingly, Grady County's third ground for dismissal in its motion to dismiss (Docs. 4 & 5) is **DENIED.**

### iv. Whether the *Heck* doctrine bars this suit

Fourth, Grady County argues that Jones' § 1983 claims are barred under the doctrine in *Heck v. Humphrey*, 512 U.S. 477 (1994), because the conviction and sentence connected to the administrative costs have not been reversed, expunged, or invalidated. (Doc. 5 at 4, 8-9, 11, 12.) Jones asserts that the referenced doctrine, known as the favorable termination requirement, does not apply to her case because her claims are not cognizable in habeas and success on the merits of this suit would not demonstrate the invalidity of the relevant criminal judgment. (Doc. 20 at 11.)

Under *Heck*, a § 1983 suit is not subjected to the favorable termination requirement unless "judgment in favor of the plaintiff [in the § 1983 suit] would necessarily imply the invalidity of [her] conviction or sentence." *See Heck*, 512 U.S. at 487. The particular concern in the *Heck* line of cases was that prisoners could avoid the strictures of habeas but nonetheless challenge the duration or fact of their physical confinement, which is "the core of habeas corpus." *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005). *Heck* does not apply unless the § 1983 challenge goes to "the core of habeas corpus." *Id.* at 82.

In this case, Jones challenges the constitutionality of statutorily unauthorized administrative costs she was required to pay in connection with a criminal conviction. Habeas petitions under § 2254 may be brought "only on the ground that [a prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "A collateral attack under [§ 2254] contests only custody . . . and not fines or special assessments." *Ryan v. United States*, 688 F.3d 845, 849 (7th Cir. 2012); *see also Dohrmann v. United States*, 442 F.3d 1279, 1280 (noting that 28 U.S.C. § 2255 "affords relief only to those claiming the right to be released from custody"). Because a habeas challenge of the administrative costs was never available to Jones, her suit is clearly not at "the core of habeas corpus." For that reason, the Court finds that *Heck* does not apply to Jones' suit for damages. Also, in any event, *Heck* does not bar Jones' claim for injunctive relief. *See Edwards v. Balisok*, 520 U.S.

641, 648 (1997). As such, Grady County's fourth ground for dismissal in its motion to dismiss (Docs. 4 & 5) is **DENIED.**

### B. State Tort Claims

Next, Grady County argues that it is entitled to sovereign immunity under Georgia law as to Jones' state tort claims because Jones failed to establish that such immunity was waived. (Doc. 5 at 14-16.) Jones asserts that sovereign immunity does not apply to suits to enjoin *ultra vires* acts. (Doc. 20 at 18.) However, since the briefing of this matter, the Georgia Supreme Court reversed the case relied upon by Jones. *See Ga. Dep't of Nat. Res. v. Ctr. for a Sustainable Coast*, 755 S.E.2d 184, 185-86 (Ga. 2014). That case, overturning prior precedent, *see IBM v. Evans*, 453 S.E.2d 706 (Ga. 1995), held that sovereign immunity applies absent a waiver by the Georgia legislature notwithstanding an allegation of *ultra vires* acts. *Ctr. for a Sustainable Coast*, 755 S.E.2d at 188. Likewise, sovereign immunity applies to equitable relief. *See id.* at 191. Jones did not otherwise attempt to demonstrate that sovereign immunity has been waived. For that reason, the Court finds that Jones' state law claims against Grady County are barred by sovereign immunity under Georgia law. *See McCobb v. Clayton Cnty.*, 710 S.E.2d 207, 217-18 (Ga. App. Ct. 2011) (noting that waiver of sovereign immunity must be established by party seeking to benefit from such waiver). As such, Grady County's motion to dismiss Jones' state law claims is **GRANTED.**

### C. Declaratory relief

Grady County argues that Jones lacks standing as to her claim for declaratory relief because the County does not have the authority to control Bass' actions. (Doc. 5 at 18.) Jones states that she seeks a declaration from the Court that the County's policy or practice of retaining and expending the administrative costs violates the U.S. Constitution. (Doc. 20 at 19.) Without benefit of a reply from Grady County as to the referenced argument, the Court construes the Parties to be in agreement that Jones has standing to seek declaratory relief as to the allegedly unconstitutional acts directly committed by Grady County. In that regard, Grady County's motion to dismiss Jones' claim for declaratory relief is **DENIED.**

### D. Claims under Georgia Constitution

Grady County's only argument for dismissal of Jones' claims under the Georgia Constitution is based on the County's assumption that Jones' federal claims would be dismissed. For the reasons stated above, the County's assumption is incorrect. Also, "[s]overeign immunity is not a bar to an action alleging a violation of a constitutional right . . . or an action brought pursuant to 42 U.S.C. § 1983." *Kilgo v. Dep't of Corrs.*, 413 S.E.2d 507, 508 (Ga. Ct. App. 1991) (citations omitted). As such, Grady County's motion to dismiss Jones' claims under the Georgia Constitution is **DENIED.**

## II. Judge Bass

Bass advances three general arguments for dismissal of Jones' claims against him. First, he seeks to adopt Grady County's arguments that (1) Jones' due process claim is barred because an adequate postdeprivation remedy is available to her, (2) Jones' takings claim is not ripe because she did not exhaust Georgia's inverse condemnation procedure, and (3) Jones' entire § 1983 suit is barred by the *Heck* doctrine. (Doc. 10 at 2.) For the reasons discussed above, all of those grounds for dismissal are denied. Second, Bass asserts that the doctrine of judicial immunity bars Jones' § 1983 and state law claims. (*Id.* at 2-3.) Third, under the assumption that Jones' federal claims will be dismissed, Bass states that the Court should decline to exercise supplemental jurisdiction over Jones' state constitutional claims. (*Id.* at 3.) For the reasons discussed below, the federal claims will not be dismissed. For that reason, Bass' argument for dismissal of the state constitutional claims is moot. Thus, as to Bass, the Court is left only with the matter of whether he is entitled to judicial immunity.

### A. Judicial Immunity

Bass argues that judicial immunity bars the federal and state law claims against him because he was acting in his judicial capacity. (Doc. 10 at 2-3.) Bass states that Jones was harmed only by the order that required her to pay administrative costs. (Doc. 29 at 2-3.) Jones asserts that her complaint seeks retribution for Bass' act of creating the policy of collecting administrative costs. (Doc. 19 at 6.) In that light, Jones argues, Bass was acting in a legislative capacity and is therefore not protected by judicial immunity. (*Id.* at 10.)

11

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Though a judge is entitled to absolute immunity when performing a judicial or adjudicative function, he is not entitled to such immunity when acting in a legislative capacity. *Supreme Court of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 731 (1980). "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (citing *Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983)). Legislative actions involve the promulgation of "rules of general application and are statutory in nature." *Id.* (quoting *Consumers Union of U.S., Inc. v. Am. Bar Ass'n*, 470 F. Supp. 1055, 1064 (E.D. Ga. 1979)) (J. Warriner, dissenting)).

The Court finds that Jones' complaint sufficiently alleges that Bass was not acting in his judicial capacity when his unconstitutional acts harmed Jones. The Court would unduly restrict the language of Jones' complaint if it were to construe the allegations to be that Bass acted unconstitutionally only when he required Jones and other putative class members to pay administrative costs. Instead, when viewed in a light most favorable to Jones, *see Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), Jones' complaint asserts that she was harmed by Bass' creation and enforcement of a policy that required State Court defendants to pay administrative costs which were not authorized by law. Though Bass made an individualized determination of the amount of administrative costs owed by Jones, he was acting pursuant to his policy of collecting administrative costs from the defendants who appeared before him. He created the referenced policy outside of the courtroom and equipped the Grady County State Court with various procedures to process the administrative costs. The creation of a generally applicable policy of collecting costs and fees goes beyond the role of a judge and does not constitute "a normal judicial function." *See Supreme Court of Va.*, 446 U.S. at 731 (finding judges acted in legislative capacity when they promulgated rules of general

applicability). As such, the Court finds that Bass was not acting in his judicial capacity and is therefore not entitled to absolute judicial immunity.[3] Bass makes no other argument that Jones' claims against him should be dismissed. As such, Bass' Motion to Dismiss (Doc. 9) is **DENIED.**

## CONCLUSION

For the foregoing reasons, Defendant Grady County's Motion to Dismiss (Doc. 4) is **GRANTED-IN-PART and DENIED-IN-PART**, Defendant Judge J. William Bass' Motion to Dismiss (Doc. 9) is **DENIED**, and Jones' Motion to Exclude Affidavits from Consideration (Doc. 32) is **GRANTED.** Jones' state law claims against Grady County are **DISMISSED WITHOUT PREJUDICE.** Jones' remaining claims shall proceed on their merits.

**SO ORDERED**, this  13th  day of August 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] The Court notes that judicial immunity "does not bar injunctive relief against judicial officers acting in their judicial capacity." *Wahl v. McIver*, 773 F.2d 1169, 1172 (1985).