IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

Filed at __1:40__ P __M__
__3/18__, 20 __15__

__BCL__
DEPUTY CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| ROBERTA IMOGENE JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:13-CV-156(WLS) |
| ) | |
| GRADY COUNTY, Georgia, ) | |
| ) | |
| JUDGE J. WILLIAM BASS, SR., ) | |
| Grady County State Court Judge, ) | |
| in his official and individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |

### ORDER ON THE JOINT MOTION FOR CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, APPOINTMENT OF CLASS COUNSEL, PRELIMINARY APPROVAL OF A PROPOSED SETTLEMENT, DIRECTION REGARDING NOTICE TO THE CLASS, AND THE SCHEDULING OF A FINAL FAIRNESS HEARING

Plaintiff Roberta Imogene Jones, defendant Grady County, Georgia, and defendant J. William Bass, Sr., (the "Parties") filed a joint motion (the "Motion") seeking: (1) certification of a class for settlement purposes; (2) appointment of class counsel; (3) preliminary approval of a proposed settlement; (4) direction regarding notice to class; and (5) the scheduling of a final fairness hearing, all of which is predicated on the following allegations:

    A.    The State Court of Grady County is located in Cairo, Georgia, and has jurisdiction over the trial of criminal cases below the grade of felony.

    B.    Since 2002, J. William Bass, Sr. has served as judge of the State Court of Grady County, and he is hereinafter referred to as "Judge Bass."

1

C. In the complaint filed in the above-styled action, plaintiff Roberta Imogene Jones ("Jones") alleged that Judge Bass required criminal defendants who appeared before him to pay "Administrative Costs" as a part of their sentences.

D. Judge Bass contends that he did not impose Administrative Costs on any criminal defendant who appeared before him. Instead, Judge Bass contends that, after he imposed a fine on a criminal defendant who appeared before him, he would complete a sentencing sheet that deemed a portion of the fine as Administrative Costs.

E. Any criminal defendant who paid Administrative Costs paid that money to his or her probation officer or to the Clerk of the State Court of Grady County.

F. Regardless of who initially received the money associated with the payment of Administrative Costs, that money was eventually transferred to Grady County and deposited into the county treasury.

G. On July 9, 2012, Jones attended a hearing (the "Hearing") conducted by Judge Bass and entered a plea of guilty to the charge of Driving Under the Influence.

H. The transcript of the Hearing shows that Judge Bass sentenced Jones to one year of probation and imposed a fine of $1,000.00.

I. The sentencing sheet that Judge Bass completed after the Hearing shows that, of the $1,000.00 that Jones was ordered to pay, $700.00 was deemed to be Administrative Costs.

J. Jones paid the $1,000.00 that she was ordered to pay by Judge Bass.

K. On September 24, 2013, Jones filed suit against Judge Bass and Grady County (hereinafter collectively referred to as "Defendants").

L.  In her complaint, Jones asserted claims for alleged violations of the rights afforded to her by the Constitution of the United States and the Constitution and laws of the State of Georgia.

M.  In her complaint, Jones also sought the certification of a class consisting of all persons who have paid Administrative Costs.

N.  The class that Jones initially proposed contains more than 400 individuals.

O.  On October 9, 2014, the Parties attended a mediation.

P.  At the conclusion of the mediation, the Parties agreed to settle the claims being asserted in this case and the terms of that agreement are memorialized in the settlement agreement (the "Agreement").

Q.  The Parties have asked the Court to certify for settlement purposes a class ("the Class") of all individuals who: had a criminal case pending in the State Court of Grady County; were required to pay Administrative Costs pursuant to an order by Judge Bass dated on or after September 24, 2011; and paid some or all of the Administrative Costs entered by Judge Bass.

The Court having read and considered the Motion, and approving of the terms of the Agreement, it is hereby ORDERED and ADJUDGED as follows:

I.  **CERTIFICATION OF THE CLASS**

"To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b)." *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D Ga. 2012). As discussed below, the Court finds that the proposed class satisfies the numerosity, commonality, typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a).

The Court also finds that issues of law and fact common to the members of the class predominate, and, in these circumstances, a class action is a superior method for resolving the disputed claims. Thus, the proposed class also satisfies the requirements of Rule 23(b).

### A.  The Class Satisfies the Requirements of Rule 23(a).

The analysis required by Rule 23(a) focuses on numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); see also *Morefield,* 2012 WL 1355573, *2. Each of the relevant factors is considered below.

#### 1.  Numerosity

"Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable." *Morefield,* 2012 WL 1355573, *2. "There is no single fixed number of Class Members required to meet the numerosity requirement." *Hillis v. Equifax Consumer Services, Inc.,* 2007 WL 1953464, *7 (N.D. Ga. 2007). However, the Eleventh Circuit has noted that "generally less than twenty-one is inadequate, [and] more than forty [is] adequate . . . ." *American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986). In this case, the Class consists of more than 400 members. For that reason, the requirement of numerosity is satisfied.

#### 2.  Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. *Wal-Mart Stores, Inc.,* 131 S. Ct. 2541, 2550-51 (2011). "Common questions are those that arise from a common nucleus of operative facts." *Hillis,* 2007 1953464, *7. "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Morefield,* 2012 WL 1355573, *2. Commonality requires a plaintiff to demonstrate that class members have suffered a common injury that is capable of class-wide resolution. *Wal-Mart,* 131 S. Ct. at 2551.

As noted above, the claims asserted in the lawsuit are based on the alleged imposition of Administrative Costs by Judge Bass. Plaintiff claims that the imposition of these Administrative Costs violated her rights under the United States and Georgia Constitutions. Other class members have the same claim, and the resolution of these claims would depend on the same evidence and legal analysis. Because Judge Bass ordered each member of the Class to pay an amount of money that was deemed to be Administrative Costs, and each member of the Class paid some or all of those Administrative Costs, the commonality requirement imposed by Rule 23(a)(2) is satisfied.

### 3. Typicality

"Typicality under Rule 23(a)(3) requires that 'the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." *Morefield,* 2012 WL 1355573, *2. "Typicality is satisfied where the named plaintiff's claims are sufficiently similar to those of the absent Class Members to conclude that the representative will protect the interest of the class and that there will be no antagonistic interests between the representative and the proposed class." *Hillis,* 2007 1953464, *7.

As noted above, the Class consists of individuals who were ordered, on or after September 24, 2011, to pay an amount of money that was deemed to be Administrative Costs, and who actually paid some or all of those costs. The allegations contained in Plaintiff's's complaint demonstrate that the claim that Plaintiff is asserting is typical of the claims asserted on behalf of the other members of the Class. In particular, Plaintiff alleges that she appeared before Judge Bass on July 9, 2012, and entered a plea of guilty to the charge of DUI. Thereafter, Judge Bass prepared a sentencing sheet that showed that Plaintiff was required to pay $700.00 in Administrative Costs, and Plaintiff paid those costs. As such, Plaintiff's claim is sufficiently

similar to those of the absent Class members and, therefore, the requirement of typicality imposed by Rule 23(a)(3) is satisfied.

### 4. Adequacy

"Adequacy under Rule 23(a)(4) is queried through the following: '(1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue." *Morefield*, 2012 WL 1355573, *2. The requirement of adequacy is satisfied because there are no conflicts of interest between Plaintiff and the members of the Class, and because the attorneys representing Plaintiff and the putative Class have experience in civil rights and class action litigation. *See infra* § II, n. 1.

### B. The Class satisfies the requirements of Rule 23(b).

"In addition to proving the Rule 23(a) requirements, [the Parties] must also satisfy the criteria under Rule 23(b)(3). Rule 23(b)(3) asks whether: (1) issues of law and fact common to members of the class predominate over questions only affecting individual members; and (2) whether a class is the superior method of resolving the dispute." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 556 (N.D. Ga. 2007); *Hillis*, 2007 1953464, *9 ("Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.")

Under Rule 23(b)(3), the Court must first examine the underlying cause of action to determine whether questions of law and fact predominate. *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.*, 762 F.3d 1248, 1253 (11th Cir. 2014). Plaintiff alleged violations of the Due Process Clause and the Takings Clause under 42 U.S.C. §

1983 and the Georgia Constitution. The claims asserted in this case are based on the alleged imposition of Administrative Costs by Judge Bass. In particular, in her complaint, Plaintiff alleged that Judge Bass did not have the authority to impose Administrative Costs and that the imposition of those costs violated the rights afforded to her by the Constitutions of the United States and the Constitution and laws of the State of Georgia. The proposed Class consists of those individuals who were purportedly ordered to pay Administrative Costs on or after September 24, 2011, and who paid all or part of those costs. Thus, in this case, the thread that is common to the Class members – the payment of Administrative Costs – is also the basis for the claim.

The four factors listed in Rule 23(b)(3) further compel this Court to find that the "predominance" criterion is satisfied. First, no other class member has expressed an interest in controlling the prosecution of this action. Fed. R. Civ. P. 23(b)(3)(A). Second, there is no other pending litigation regarding this matter. Fed. R. Civ. P. 23(b)(3)(B). Third, there has been no suggestion from any party or class member that it would be undesirable to concentrate the litigation of the claims in this forum. Fed. R. Civ. P. 23(b)(3)(C). Fourth, the Settlement Agreement sets forth a common-sense, practical and manageable approach to resolving this controversy. Fed. R. Civ. P. 23(b)(3)(D).

The Court further concludes that settling this action as a class would be beneficial. A class action will prevent wasteful, duplicative actions that will raise the same issues and questions of law. Absent class certification, each settling plaintiff would have to pursue an individual action and risk receiving no recovery, while Defendants could face multiple claims. For these, reasons, the Court concludes the class action is a superior method for resolving this

matter. *Columbus Drywall*, 258 F.R.D. at 558. The requirements of predominance and superiority are satisfied.

For the foregoing reasons, a class (the "Class") consisting of each individual who meets the following criteria is hereby CERTIFIED:

> a. the individual had a criminal case pending in the State Court of Grady County; and
>
> b. on or after September 24, 2011, Judge Bass entered an order in the individual's criminal case that required the individual to pay Administrative Costs; and
>
> c. the individual paid some or all of the Administrative Costs ordered by Judge Bass.

## II. APPOINTMENT OF CLASS COUNSEL

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv). Plaintiff is represented by lawyers from the Southern Center for Human Rights ("SCHR"), a privately funded, non-profit organization with extensive experience in civil rights and class action litigation. The Court finds as follows with respect to the appropriateness of appointing Plaintiff's counsel as Class Counsel pursuant to Rule 23(g)(1):

First, Plaintiff's counsel represented to the Court that they took the following stepsto identify and investigate possible claims: (1) observed Grady County State Court proceedings; (2)

examined and analyzed Grady County State Court files; (3) researched the legality of charging "Administrative Costs," possible constitutional and state law challenges to the imposition of such costs, and possible defenses to the instant lawsuit; (3) filed Open Records Act requests seeking pertinent documents; (4) met with potential plaintiffs and witnesses; (5) attended the Judicial Qualifications Commission proceedings pertaining to Judge Bass, and reviewed documents related thereto; (6) consulted with officials from the Administrative Office of the Courts regarding the legality of Administrative Costs; (7) calculated the amount of Administrative Costs collected by Grady County during a one-year period, and consulted with a certified public accountant regarding the same.

Second, Plaintiff's counsel satisfies Rule 23(g) based on their experience in cases similar to the present case. SCHR has experience in class action litigation and the litigation of constitutional claims of the type raised in this lawsuit.[1]

Third, counsel demonstrated their knowledge of the applicable law through their briefing on the constitutional claims and defenses at issue. (Doc. 19, 20, 33, 41.)

Fourth, Plaintiff's counsel committed resources to representing the Class. Plaintiff's counsel identified and investigated possible claims (as set forth above), filed the Complaint, responded to Defendants' motions to dismiss, and participated in mediation. Further, under the

---

[1] SCHR was class counsel in the following certified class actions: *Flournoy v. State*, No. 2009-CV-178947 (Fulton County Superior Court) (challenging denial of indigent plaintiffs' constitutional right to appellate counsel in their criminal appeals); *People Accused of Crimes v. Crawford*, No. 2008-CV-151884 (Fulton County Superior Court) (challenging denial of the right to counsel on behalf of a class of indigent defendants); *Whitaker v. Perdue*, 4:06-cv-140-CC (N.D. Ga.) (challenging certain residence and employment restrictions imposed on all persons on the Georgia sex offender registry); *Laube v. Haley*, No. 02–T–957 (M.D. Ala.) (challenging conditions of confinement on behalf of women at Tutwiler Prison); *Leatherwood v. Campbell*, No. CV-02-BE-2812-W (N.D. Ala) (representing men with HIV/AIDS who challenged deficiencies in medical care at Limestone Correctional Facility); *Maynor v. Morgan County*, No. 5:01-CV-0851 (N.D. Ala.) (challenging conditions of confinement at the Morgan County Jail). SCHR also served as plaintiffs' counsel in *Williams v. Clinch County*, No. 7:04-CV-124-HL (M.D. Ga.) (challenging a sheriff's imposition of "jail costs" on pre-trial detainees, and resulting in return of same to those who paid).

Settlement Agreement, Plaintiff's counsel agrees to undertake additional responsibilities, including distribution of funds to Class members.

Having considered the foregoing, the Court finds that Plaintiff's attorneys satisfy the standards in Fed. R. Civ. P. 23(g)(1), and will fairly and adequately represent the interests of the Class, Fed. R. Civ. P. 23(g)(2) and (g)(4). Therefore, Gerald Weber and Sarah Geraghty of the Southern Center for Human Rights are hereby appointed as class counsel.

### III. PRELIMINARY APPROVAL OF THE SETTLEMENT

In considering whether a settlement of a class action should be preliminarily approved, the Court must determine whether the proposed settlement is fair, reasonable, adequate and free of collusion. *Day v. Persels & Assoc., LLC*, 729 F.3d 1309, 1326 (11th Cir. 2013); *Columbus Drywall*, 258 F.R.D. at 559.

The Eleventh Circuit has identified six factors that a court should consider when determining whether a class action settlement is fair, adequate, and reasonable. *Day*, 729 F.3d at 1326; *In re Smith*, 926, F.2d 1027, 1029 (11th Cir. 1991). The factors are: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the state of the proceedings at which the settlement was achieved." *Id.* In addition, this Court has suggested consideration of additional factors, including: (7) the terms of the settlement; (8) the procedures afforded to notify class members of the proposed settlement and to allow them to present their views; and (9) the judgment of experienced counsel. *Meyer v. Citizens & S. Nat'l Bank*, 677 F. Supp. 1196, 1201 (M.D. Ga. 1998).

There is a strong judicial policy favoring settlement. *Meyer*, 677 F. Supp. at 1200. After considering all of these factors, as set forth below, the Court concludes that the settlement is fair, adequate, and reasonable, was reached without collusion, and should be approved.

### A. Fairness, Adequacy and Reasonableness

#### 1. The Likelihood of Success at Trial.

Plaintiff claims that Judge Bass violated her rights under the U.S. Constitution and the Constitution and laws of the State of Georgia by imposing Administrative Costs upon her after she pleaded guilty to a crime, and she further contends that Grady County violated her rights by receiving and retaining the funds that were paid in connection with the imposition of those costs. Because all of the members of the class paid Administrative Costs after pleading guilty to a crime, and because there is no indication that those convictions have been overturned, Judge Bass and Grady County argued that the claims asserted against them by Plaintiff (and the Class) are barred by the favorable termination requirement established in *Heck v. Humphrey*, 512 U.S. 477 (1994). In addition, Judge Bass argued that the claims asserted against him are barred by the doctrine of judicial immunity and Grady County has argued that it cannot be held liable pursuant to 42 U.S.C. § 1983 for the actions of Judge Bass. For those reasons, it is not certain that Plaintiff (or the Class) would be successful at trial.

#### 2. The Range of Possible Recovery at Which Settlement is Fair, Adequate and Reasonable.

"In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *Columbus Drywall*, 258 F.R.D. at 559. As such, it is necessary to examine the benefit that each member of the Class will receive pursuant to the Agreement. Each member of

the Class has been adjudicated guilty of a misdemeanor in the State Court of Grady County, and each member of the Class has paid Administrative Costs as a result. Judge Bass assessed Administrative Costs ranging from $25.00 to $2,000.00.[2] According to the calculations performed by Plaintiff's attorneys, the average amount of Administrative Costs assessed to class members was $613.00. Pursuant to the terms of the Agreement, each member of the Class who submits a claim form will receive a payment of $100.00 as compensatory damages. In addition, the Administrative Costs paid by each one of those class members will be refunded, up to $700.00. For example, pursuant to the terms of the Agreement, an individual who paid $500.00 in Administrative Costs will received a payment of $600.00 (a payment of $100.00 in compensatory damages plus a refund of $500.00). On the other hand, a person who paid $1,500.00 in Administrative Costs will receive a payment of $800.00 (a payment of $100.00 in compensatory damages plus a refund of $700.00).[3] Given the uncertainties discussed in the preceding section, the proposed settlement is within the range of possible recovery. *Id.*

### 3. The Point on or Below the Range of Possible Recovery at Which a Settlement is Fair, Adequate and Reasonable.

To determine whether a proposed settlement falls within the range of reasonableness, a Court must consider the value to the Class. *Id.* In order to do so, it is necessary to consider the terms of the proposed settlement agreement. In this case, the Agreement will result in a number of members of the Class receiving a payment in excess of the amount of money that they paid in Administrative Costs while a small number of class members may receive less money than they paid in Administrative Costs. For instance, using the previous examples, a Class member who

---

[2] Persons who were assessed Administrative Costs but did not pay any Administrative Costs are not members of the Class.

[3] According to the analysis conducted by Jones's attorneys, only 27 Class members were assessed more than $800.00 in Administrative Costs. Of those, 12 Class members were assessed $850.00; 2 Class members were assessed $1,000.00; 1 Class member was assessed $1,067; 2 Class members were assessed $1,250.00; 9 Class members were assessed $1,500.00; and 1 Class member was assessed $2,000.00 in Administrative Costs.

paid $500.00 in Administrative Costs will receive $600.00, whereas a person who paid $1,500.00 in Administrative Costs will receive $800.00. Thus, the proposed recovery ranges from more than 100 percent of the Administrative Costs paid by some class members to approximately 53 percent of the amount paid by other class members. Under the Settlement Agreement, the vast majority of Class members will get back all the money they paid in Administrative Costs, plus $100. Only 27 Class members out of 400 will not receive the full amount they paid in Administrative Costs, but even they are eligible to receive $800. The Parties submit that the range of recovery afforded by the Agreement compares favorably to other settlements that have received court approval. For instance, the Court in *Columbus Drywall* noted that, in antitrust actions, "district courts have approved settlements equaling a small fraction of the potential recovery . . . ." *Id.*; see *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving a comprehensive settlement equal to 12.7 to 15.3 percent of the potential recovery); and *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, *6 (S.D. N.Y. 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class.) Based on the foregoing, the amount of the payments called for by the Agreement is fair, adequate and reasonable.

### 4. The Complexity, Expense and Duration of Litigation

Because they believe that they have legal defenses to Plaintiff's claims, Judge Bass and Grady County filed motions to dismiss Plaintiff's complaint. On August 13, 2014, the Court entered an order denying those motions to dismiss. By that point, the Parties were familiar with the facts and legal issues necessary to evaluate the claims, defenses and potential recoveries. For instance, Plaintiff's attorneys were able to provide information regarding the identity of the members of the Class and the amount of money that each Class member paid in Administrative

Costs. Because the facts and issues were apparent, the Parties attended mediation on October 9, 2014, and the negotiations that took place at the mediation resulted in the Agreement. By entering into this negotiated resolution of the case, the parties avoid the time and expense of further, protracted litigation, including discovery, a potential interlocutory appeal, trial, and/or appeal. The Agreement avoids the potential costs of continued litigation for the Class and the Defendants.

### 5. Substance and Degree of Opposition to the Settlement.

"In determining whether to certify a settlement class, a court must also examine the degree of opposition to the settlement. Here, because notice has not yet been provided to the class members, the Court cannot assess whether there are any objectors." *Columbus Drywall*, 258 F.R.D. at 560. For that reason, the Court will address that issue once notice has been sent to the members of the Class. *See Id.*

### 6. The Stage of Proceedings at which the Settlement was Achieved.

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. American Express Co.*, 406 F. Supp.2d 1298, 1324 (S.D. Fla. 2005). Here, although no discovery took place, the Plaintiff had access to court records and other public records that allowed Plaintiff to evaluate the merits of her case. The Parties agree on the basic facts and they are set forth in the Settlement Agreement. In addition, the Parties are familiar with the relevant legal issues as those issues were raised in the Defendants' motions to dismiss. Settlement was achieved in good faith following a formal mediation and after this Court ruled on Defendants' motions to dismiss.

### 7. Terms of the Settlement

The Court has reviewed the Settlement Agreement and described its pertinent terms in Section III (A)(2) and (3) above. Under the Settlement Agreement, all Class members will be entitled to monetary compensation. Most class members (about 86%) will be entitled to receive back all of the money they paid in Administrative Costs, plus $100. Only about 14% of Class members will receive less than what they may have paid in Administrative Costs, but even they will be entitled to receive up to $800. These settlement terms are fair and reasonable.

### 8. Procedures to Notify Class Members of the Proposed Settlement

For the reasons set forth below, the procedures to provide notice to the class are reasonably calculated to apprise class members of the pendency of the action and afford them an opportunity to present their views.

### 9. Judgment of Experienced Counsel.

In considering whether to approve the settlement, this Court is entitled to rely upon the judgment of experienced counsel for the parties. *Meyer*, 677 F. Supp. at 1210. "Indeed the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* (internal quotations and citation omitted). Here, counsel for the Parties are competent and experienced and have recommended that the Court approve the settlement.

### B. Absence of Collusion

There is no evidence in the record before the Court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the parties or their attorneys in arriving at the terms of the settlement. On the contrary, the attorneys for the respective parties have vigorously advanced the interests of their respective clients. The Defendants filed motions to dismiss this case, Plaintiff contested those motions, and the Court permitted certain claims to

go forward. Defendants then sought reconsideration of the Court's order. A settlement was reached only after an arms-length negotiation before a mediator. Therefore, the Court finds that the settlement was negotiated without any fraud or collusion. *Meyer*, 677 F. Supp. at 1201.

After considering the factors listed above in light of the terms of the proposed settlement, the Court hereby GRANTS preliminary approval of the settlement outlined in the Agreement.

### IV. ADEQUACY OF NOTICE

The Class members must be notified of the terms of the settlement that has been preliminarily approved by the Court. In that regard, Rule 23(e) of the Federal Rules of Civil Procedure specifies that, "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–812 (1985). Further, pursuant to Fed. R. Civ. P. 23(h)(1), Class counsel must notify class members in a reasonable manner of any motion for attorney fees and costs.

In accordance with Rule 23(e), the Court hereby DIRECTS that the members of the Class be notified in the following manner:

    a.    within 30 days of the entry of this order, Grady County will publish the advertisement (the "Advertisement") attached as Exhibit A to the Agreement in the Cairo Messenger once a week for two weeks;

    b.    on or before the date on which the Advertisement is first published in the newspaper, Grady County will mail the notice (the "Notice") attached as

Exhibit A to this Order[4] to the individuals identified on the list attached as Exhibit C to the Settlement Agreement, who are believed to be the members of the Class, with the following understanding:

(1) the Notice will be mailed to the most recent address included in the file maintained by the Clerk of the State Court of Grady County with respect to each Class member's criminal case; and

(2) if the Notice that is originally mailed is returned to Grady County with a forwarding address, Grady County will mail a second Notice to the forwarding address;

(3) Grady County will inform the attorneys representing the Class of each Notice that is returned as undeliverable so that the attorneys for the Class will have an opportunity to identify a current address for each such Class member. If the attorneys for the Class identify a more current address, they shall provide that address to Grady County and Grady County shall mail another Notice to that address within five days of receipt of that address.

---

[4] The parties revised the Notice to comply with Fed. R. Civ. P. 23(h)(1) (requiring Class counsel to notify class members of their request for attorneys fees and costs). The Court notes that fees may be assessed against government officials after a case has been settled by the entry of a consent decree. *Evans v. Jeff D.*, 475 U.S. 717, 720 (1986) (citing *Maher v. Gagne*, 448 U.S. 122 (1980). *See also* Fed. R. Civ. P. 23(h)(1) (stating that a court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

The Court finds that the foregoing notice procedures are reasonably calculated to apprise Class members of the pendency of the action and afford them an opportunity to present their objections. *Phillips Petroleum Co.,* 472 U.S. at 811–812.

## V.  SCHEDULING

Because it believes that the timeline established by the Agreement is reasonable, in accordance with that timeline, the Court hereby institutes the following schedule:

A.  as soon as practical following the entry of this order, Grady County shall notify the members of the Class as directed above, including by way of publication of the Advertisement;

B.  the individuals who meet the criteria of the Class shall have 90 days from the date of the first publication of the Advertisement, hereinafter referred to as the "Deadline," to do the following:

    1.  request the money due to them pursuant to the terms of the Agreement by completing Section I of the Response Form and mailing it to Raleigh Rollins at 411 Gordon Avenue in Thomasville, Georgia 31792;

    2.  exclude themselves from the Class by completing Section II of the Response Form and mailing it to Raleigh Rollins at 411 Gordon Avenue in Thomasville, Georgia 31792;

    3.  object to the terms if the Agreement by filing a letter with the Clerk of the United States District Court for the Middle District of Georgia at 201 W. Broad Street in Albany, Georgia 31701;

    4.  enter an appearance or move to intervene in the lawsuit.

C.  Within 30 days after the Deadline, the attorney for Grady County will determine the amount of money owed to each member of the Class who submitted a Response Form (with Section I completed) on or before the Deadline (the "Individual Payment Amount"), and the amount of money owed to the Class as a whole (the "Total Settlement Amount"), and the attorney for Grady County shall provide all documentation to the attorneys for the Class that shows the Individual Payment Amount due to each member of the Class and the Total Settlement Amount.

D.  Pursuant to Rule 23(h), Class Counsel shall file a motion and supporting documentation in support of a request for reasonable attorneys' fees and expenses within 45 (forty-five) days of the entry of this Order.

E.  Pursuant to Rule 23(e), the Court will hold a hearing on 9/15/2015 @ 2:00 p.m. with respect to the fairness of the settlement that is memorialized by the Agreement, the validity of any objections that may be raised with respect to the Agreement, and whether the settlement should be given final approval.

F.  If the Court gives its final approval to the settlement, it will enter an order that:

1.  directs that a check for the Total Settlement Amount be mailed to the attorneys for the Class and that the check, which will be made payable to the attorneys for the Class, be deposited in their trust account;

2.  within 15 days of their receipt of the check for the Total Settlement Amount, the attorneys for the Class shall mail a check for the Individual Payment Amount to each member of the Class who is entitled to payment;

3.  bars the members of the Class from asserting any further claim or lawsuit against Judge Bass, Grady County, and their respective agents, officers,

employees, officials and personal representatives with respect to the imposition, receipt or retention of Administrative Costs; and

4. dismisses this case with prejudice.

This 19th day of March, 2015.

_____
The Honorable W. Louis Sands
United States District Judge

CONSENT TO BY:

s/Sarah Geraghty
Georgia Bar No. 291393
Southern Center For Human Rights
83 Poplar Street, N.W.
Atlanta, GA 30303
Telephone: (404) 688-1202
Email: sgeraghty@schr.org
Attorney for Roberta Imogene Jones

s/ James L. Elliott
Georgia Bar No. 244244
Elliott, Blackburn & Gooding, PC
3016 North Patterson Street
Valdosta, Georgia 31602
Telephone: (229) 242-3333
Email: jelliott@ebbglaw.com
Attorney for J. William Bass, Sr.

s/Raleigh W. Rollins
Raleigh W. Rollins
Georgia Bar No. 613860
ALEXANDER & VANN, LLP
411 Gordon Avenue
Thomasville GA 31792
Telephone: (229) 226-2565
Email: rrollins@alexandervann.com
Attorney for Grady County, Georgia