## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| ROBERTA IMOGENE JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NO.: 1:13-CV-156 (WLS) |
| v. | : | |
| | : | |
| GRADY COUNTY, GEORGIA, and | : | |
| JUDGE J. WILLIAM BASS SR., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

In the preliminary order of settlement in the above-captioned class action, the Court approved the Parties' agreement to litigate the issue of attorneys' fees separately and independently from the other terms of the class settlement agreement. Because the Defendants have responded to the Plaintiff's Motion for Attorneys' Fees and Expenses, and the Plaintiff has replied thereto (Docs. 50, 54, 55), the Court finds that the Motion for Attorneys' Fees and Expenses (Doc. 50) is ripe for review. *See* M.D. Ga. L.R. 7.3.1.

To determine the appropriate amount of an award of attorney's fees, the Court multiplies the number of hours reasonably expended on a case by the reasonable or customary hourly rate. This "lodestar" amount is then adjusted upward or downward in light of the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1]  Ordinarily, most of the *Johnson* factors[2] will be reflected in the lodestar itself—

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] The *Johnson* factors are as follows:
   1. The time and labor expended;
   2. The novelty and difficulty of the questions raised;
   3. The skill required to properly perform the legal services rendered;
   4. The customary fee for like work;
   5. The attorney's opportunity costs in pressing the instant litigation;
   6. The time limitations imposed by the client or circumstances;
   7. The amount in controversy and the results obtained;
   8. The experience, reputation, and ability of the attorney;

for example, time and rate—rather than in an adjustment of the lodestar. *See Blum v. Stenson*, 465 U.S. 886 (1984). "A strong presumption that the lodestar figure . . . represents a 'reasonable fee' is wholly consistent with the rationale behind the usual fee-shifting statute." *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (quoting *Penn. v. Del. Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986)).

## I. Reasonable hourly rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum*, 465 U.S. at 895-96 n.11). The Parties disagree as to whether Atlanta or Albany (or the Middle District of Georgia) is the "relevant legal community" for purposes of determining the reasonable hourly rate. The relevant legal market is generally where the case is filed, see *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994), but if no such market exists where the case is litigated, then the relevant legal market is where competent counsel can be obtained. *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993) (holding that district court did not err in finding Atlanta to be the relevant legal market for a civil rights class action suit filed in Brunswick). However, to receive their non-local rates, the burden is on the non-local plaintiff to show "a lack of attorneys practicing in that place who are willing and able to handle [their] claims." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

Plaintiff contends that Atlanta should be the relevant legal market because no attorneys local to Albany or the Middle District of Georgia challenged the unlawful practices of the Defendants for seven or more years. (Doc. 50-1 at 16.) Furthermore, they submit the declaration of Albany-attorney Kenneth B. Hodges III to suggest the great unlikelihood of a local attorney taking on a case with such high risks and low rewards. (*See* Doc. 50-6.) Defendants, however, argue that Atlanta is not the relevant legal market because Section 1983 cases are often litigated throughout the Middle District of Georgia by competent,

---

9. The undesirability of the case within the legal community in which the suit arose.

experienced attorneys.  (Doc. 54 at 6.)  Their opposition is supported by the declaration of Defendants' own counsel, James L. Elliot.  (Doc. 54-1 at ¶ 5.)

The Court finds Albany to be the most appropriate legal market because the case was originally filed in this District.  Defendants' counsel is correct in their assertion that Section 1983 cases are commonly litigated throughout the Middle District by skilled and able attorneys.  While it may be true the Defendants wrongfully collected "administrative fees" for a period of seven years unchallenged, the burden remained on the Plaintiff to show that there were no local attorneys willing to take on this case.  Plaintiff attempts to shift their burden to Defendants' counsel by pointing out Defendants' failure to identify local counsel willing to litigate the claims against them.  (*See* Doc. 55 at 7.)  However, the burden is on the Plaintiff to show otherwise and not on the Defendants.  To the extent Plaintiff has attempted to do so, Plaintiff has only stated that no local attorney brought such an action, not that no local attorney was willing to do so.  Because Plaintiff failed to carry their burden, the Court finds that Albany is the relevant legal market for determining Plaintiff's reasonable hourly rates.

The prevailing party has the burden to justify the rates they are seeking.  *Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir. 1991).  In support of their assertion that $520 is a reasonable hourly rate for Gerald Weber, Plaintiff submitted the declaration of Mr. Weber, his previous attorney fee awards, a detailed list of his prior litigated constitutional law cases, and résumé.  (Doc. 50-2.)  Sarah Geraghty's rate of $350 per hour is supported by her own declaration, which highlights her education and experience.  (Doc. 50-3.)  And Ryan Primerano's rate of $200 per hour is supported by his own declaration, which likewise pinpoints his education and (albeit limited) experience.  (Doc. 50-4.)  Each rate was also supported by the declarations of Lawrence J. Bracken II (Doc. 50-5) and Kenneth Hodges (Doc. 50-6).

Defendants show through its own counsel's declaration that $200 per hour is a reasonable hourly rate because it is the rate he personally charges, which he finds reasonable for a lawyer with his background and experience (*i.e.* thirty years of practice).  (Doc. 54-1 at ¶ 6.)  Defendants also offer the personal rate of its co-counsel, Raleigh W. Rollins, Jr., which is $150 per hour (or a range of $150-200), for twenty years of practice.  (*Id.* at ¶ 7.)

Additionally, Defendants pointed out the hourly rates granted by or petitioned for in this Court in two cases involving Section 1983 litigation (neither being class action lawsuits). (Doc. 54 at 3.)   From these reasons, Defendants concluded a reasonable rate for Gerald Weber is $250 per hour; for Sarah Geraghty, $175 per hour; and for Ryan Primerano, $100 per hour.  (*Id.* at 7.)

The Court finds the rates requested by Plaintiff's counsel to be unreasonable. Though Weber and Geraghty have extensive civil rights and Section 1983 litigation experience, their requested rates are not the prevailing market rates in Albany or the Middle District.  Primerano's rates are also unreflective of the local market rate of someone with significantly less experience than his co-counsel.  The Court is also not convinced by the personal rates of Defendants' counsel or by the rates requested from this Court in other non-class action cases.  Defendants offer little rebuttal to the skill and experience of Plaintiff's counsel, as well as the complexity of the issues in the instant case.  Thus, the Court must additionally rely on its own experience to set a reasonable hourly rate.[3]  The Court will reduce each requested rate by 25% to account for the local market of § 1983 class action attorneys with comparable skill, reputation, and experience.  In doing so, the Court also takes into account the novelty and difficulty of the issues raised, the required skill related to the legal services rendered, the attorneys' opportunity costs, the amount in controversy and the results obtained, the experience, reputation, and ability of the attorneys, and the relative undesirability of the case within the legal community in which the suit arose.  *See Johnson*, 488 F.2d at 717-19.  Without necessarily finding such, the Court acknowledges that fewer local attorneys might be willing to bring an action which includes a sitting member of the local judiciary.

In other words, taking into account the local market and nature of the claims, the Court finds the adjusted rates reasonable. Accordingly, Gerald Weber is entitled to receive reasonable rate of $390 per hour; Sarah Geraghty is entitled to receive a reasonable rate of

---

[3] Although this Court has granted an hourly rate of $450 in an employment discrimination case that went to trial, *See Copeland v. Williams*, No. 1:12-CV-188 (WLS) (Doc. 44), it is common practice for this Court to award attorney's fees below $350 per hour.  *See, e.g., Tanner v. TPUSA, Inc.*, No 1:12-CV-33 (WLS) (Doc. 158) (attorney with over twenty-five years of experience awarded $350 per hour in this Fair Labor Standards Act case); *Bird v. Sumter Cty. Sch. Dist.*, No. 1:12-CV-76 (WLS), 2014 WL 2196084, at *2 (M.D. Ga. May 27, 2014) (attorney with twenty-six years of experience awarded $250 per hour in this voting rights case).

$262.50 per hour; and Ryan Primerano is entitled to receive a reasonable rate of $150 per hour.

## II. Reasonable amount of time expended

The Eleventh Circuit requires that "both the proof of the hours spent in litigation and any corresponding objections posed be voiced with a similar exactitude." *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012) (quoting *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996)). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. Counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.*

Plaintiff's counsel submitted a detailed accounting of their respective tasks and the time expended on each task. All attorneys have voluntarily reduced their actual time by 10%, Geraghty and Primerano have further reduced their travel time by 50%, and Primerano did not bill for hours spent on tasks that were excessive or redundant. The Court recognizes the type of particularity shown by Plaintiff's counsel in their records allows the Court to identify and assess each task and the time spent on each activity with relevant ease. It should also be noted that the Court finds there is no indication of block billing,[4] which is highly disfavored. *See, e.g.*, *Bird v. Sumter Cty. Sch. Dist.*, No. 1:12-CV-76 (WLS), 2014 WL 2196084 (M.D. Ga. May 27, 2014).

Defendants challenge the requested 82.2 hours expended by Plaintiff's counsel for a number of reasons. First, Defendants argue that Primerano is not entitled to 25 hours spent on traveling, reviewing, and copying court files, because it was clerical work best suited for a clerk or legal assistant. However, those hours had already been reduced from 50.25 hours, and Primerano's work reviewed as a whole could hardly be classified as clerical. His review of over 1,000 court documents provided the foundation of the complaint, which requires the skill and training of an attorney. Furthermore, Plaintiff is represented by a non-profit

---

[4] "Block billing is a practice of logging hours whereby activities are grouped together without regard to their similarity, thus rendering a review for reasonableness as to distinct activities impossible or impracticable." *Bird*, 2014 WL 2196084, at *2.

organization and their support staff may be more limited than what Defendants' counsel perceives. Thus, the Court finds that the 25 hours expended on travel, review, and copying of thousands of court documents is reasonable.

Second, Defendants argue that Primerano is not entitled to 4.5 of 9 hours of time expended on researching the *Heck* bar, because it is a common civil rights case that should have been known to Plaintiff's counsel. In their reply, Plaintiff reduced the requested 9 hours to 4.5 hours. This reduction resolves the Defendants' objection, and the Court will accept this reduction as a reasonable expenditure of time.

Third, Defendants contend Primerano is not entitled to be compensated for 30 of approximately 40 hours spent on research and responding to Defendants' motions to dismiss because that research was previously conducted prior to the filing of the complaint. Without more, Defendants plainly state that the amount of time spent on the research and responses was unreasonable. Generalized statements of reasonable or unreasonable expenditures of time are unhelpful because it does little to guide the Court in understanding the reason for granting or rejecting a request for time expended. *See Norman*, 836 F.2d at 1301. Plaintiff, however, detailed the numerous issues that required close research and briefing to overcome Defendants' attempt to end this case very early on in the litigation. Primerano also exercised reasonable billing judgment on these tasks by reducing his hours from over of 70 hours to about 40 hours. Lastly, it should be noted that Primerano's development of the research and briefing was over the course of two and a half months. Therefore, the Court will reject Defendants' general objection.

Fourth, Defendants believe it was unreasonable for Geraghty to spend 4 out of 8 hours and Weber to spend 7.5 out of 15 hours on drafting and revising the complaint. Similar to the objection above, Defendants only state that the amount of time spent on the complaint was unreasonable. Further, the Court notes the novelty and relative complexity of the complaint. Without more, the Court cannot accept Defendants' blanket objection. It will accept Plaintiff's request for 23 hours because it finds that, over a course of two months, the drafting, revision, and investigative work on this class action suit on behalf of hundreds of class members was a reasonable expenditure of time.

Fifth, Defendants object to Geraghty and Weber receiving compensation for 3 out of 6 hours (6 hours total) for attending mediation because the presence of all three of Plaintiff's attorneys was unnecessary or unreasonable.  Plaintiff replied that each attorney contributed meaningfully to the mediation.  It is not unusual for a named plaintiff in a class action lawsuit to be represented by multiple attorneys.  So long as each attorney is not being compensated for unnecessary or redundant work, the unique efforts of each attorney may be compensated.  *See Johnson v. Uni. Coll.*, 706 F.2d 1205, 1208 (11th Cir. 1993); *Norman*, 836 F.2d at 1302 (accord).  However, aside from attending the mediation, Plaintiff's counsel does not indicate their distinctive contributions in their time records or their reply brief.  The burden always remains on the fee applicant to establish their entitlement to compensation for reasonable hours.  *Norman*, 836 F.2d at 1303.  Thus, because Plaintiff's counsel did not meet this burden, the Court will reduce the requested mediation hours for Weber, Geraghty, and Primerano from 6 hours to 3 hours.

Sixth, Defendants object to Weber's request for 4.10 hours and Geraghty's request of 1.10 hours for time spent on a separate insurance case because Jones was not the "prevailing party" in that matter.  Defendants' insurer named Plaintiff as a party defendant in a matter regarding the Defendants' insurance coverage.  Plaintiff argues "because the insurance litigation could have reduced or destroyed any potential recovery for Jones and class members," defending Jones in this separate litigation was "crucial to the vindication of rights at issue" in this case.  (Doc. 55 at 4.)  Though Jones may not have been successful in the insurance matter, her recovery in this litigation could have been adversely affected by the result of the separate, but related, insurance case.  Plaintiff's counsel was not required to defend Jones in the insurance coverage litigation, but their representation was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."  *See Lambert v. Fulton Cty., Ga.*, 151 F. Supp. 2d 1364, 1372 (N.D. Ga. 2000) (quoting *Penn.*, 478 U.S. at 561) (internal quotation marks omitted).  Therefore, Weber and Geraghty are entitled to recover for their time spent on the insurance coverage litigation.

## III.    Reasonable expenses

Finally, and related to the Defendants' previous argument, Defendants object to $459.09 of Plaintiff's requested "Deposition Fee" expenses because no depositions were

taken in this case. Plaintiff replied that the deposition, which was noticed by Defendants, was taken during the insurance coverage case against Jones. For the same reasons stated above, the Court finds that Plaintiff is entitled to recover expenses from the insurance litigation.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. 50) is **GRANTED-IN-PART.** Defendant shall remit to Plaintiff **within thirty (30) days** of the entry of this order $96,362.63 in attorneys' fees and $4,392.34 in costs, for a total of $100,754.97.

**SO ORDERED**, this 9th day of September 2015.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**