IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

Filed at __8:25 A__ M
__10/14__, 20 __15__
__BCL__
DEPUTY CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| ROBERTA IMOGENE JONES, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | NO. 1:13-CV-156 (WLS) |
| ) | |
| GRADY COUNTY, Georgia, ) | |
| ) | |
| JUDGE J. WILLIAM BASS, SR., ) | |
| Grady County State Court Judge, ) | |
| in his official and individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This matter having come to be heard on September 15, 2015, to determine the fairness of the parties' Settlement Agreement, the validity of any objections raised with respect to the Settlement Agreement, and whether the Settlement Agreement should be given final approval, the Court enters the following order.

I.  **BACKGROUND**

A.  **Nature of the Lawsuit**

Plaintiff Roberta Imogene Jones filed this lawsuit against Defendants Grady County, Georgia, and J. William Bass, Sr., predicated on the following allegations.

The State Court of Grady County is located in Cairo, Georgia, and has jurisdiction over the trial of criminal cases below the grade of felony. From 2002 until 2015, J. William Bass, Sr.

served as judge of the State Court of Grady County, and he is hereinafter referred to as "Judge Bass."

In the complaint filed in the above-styled action, plaintiff Roberta Imogene Jones ("Jones") alleged that Judge Bass required criminal defendants who appeared before him to pay "Administrative Costs" as a part of their sentences. Judge Bass contends that he did not impose Administrative Costs on any criminal defendant who appeared before him. Instead, Judge Bass contends that, after he imposed a fine on a criminal defendant who appeared before him, he would complete a sentencing sheet that deemed a portion of the fine as Administrative Costs. Any criminal defendant who paid Administrative Costs paid that money to his or her probation officer or to the Clerk of the State Court of Grady County. Regardless of who initially received the money associated with the payment of Administrative Costs, that money was eventually transferred to Grady County and deposited into the county treasury.

On July 9, 2012, Jones attended a hearing (the "Hearing") conducted by Judge Bass and entered a plea of guilty to the charge of Driving Under the Influence. The transcript of the Hearing shows that Judge Bass sentenced Jones to one year of probation and imposed a fine of $1,000.00. The sentencing sheet that Judge Bass completed after the Hearing shows that, of the $1,000.00 that Jones was ordered to pay, $700.00 was deemed to be Administrative Costs. Jones paid the $1,000.00 that she was ordered to pay by Judge Bass.

On September 24, 2013, Jones filed suit against Judge Bass and Grady County (hereinafter collectively referred to as "Defendants"). In her complaint, Jones asserted claims for alleged violations of the rights afforded to her by the Constitution of the United States and the Constitution and laws of the State of Georgia. In her complaint, Jones also sought the

certification of a class consisting of all persons who have paid Administrative Costs. The class that Jones initially proposed contains more than 400 individuals.

### B. Class Settlement

On October 9, 2014, the Parties attended a mediation. At the conclusion of the mediation, the Parties agreed to settle the claims being asserted in this case and the terms of that agreement are memorialized in a Settlement Agreement. (Doc. 44-2.) The Parties then asked the Court to certify for settlement purposes a class ("the Class") of all individuals who: had a criminal case pending in the State Court of Grady County; were required to pay Administrative Costs pursuant to an order by Judge Bass dated on or after September 24, 2011; and paid some or all of the Administrative Costs entered by Judge Bass.

On March 18, 2015, the Court granted preliminary approval (Doc. 47 at 10-16) of the proposed class action settlement set forth in the Settlement Agreement (Doc. 44-2) between Plaintiff Roberta Imogene Jones, on behalf of herself and all members of the class, and Defendants Grady County, Georgia, and Judge J. William Bass, Sr. On September 15, 2015, the Court held a duly noticed final hearing on the fairness of the proposed settlement of this action. Counsel for the Class Members, Defendant Grady County, and Defendant Bass were present, and objectors to the Settlement Agreement had the opportunity to appear.

## II. FINDINGS

1. For purposes of this Order Granting Final Approval of Class Action Settlement, the Court adopts and incorporates herein by reference the parties' Settlement Agreement and exhibits (Doc. 44-2); and the Court's Order granting preliminary approval of the Settlement Agreement (Doc. 47).

2. On March 18, 2015, the Court entered findings and an Order on the Joint Motion for Certification of a Class for Settlement Purposes, Appointment of Class Counsel, Preliminary Approval of a Proposed Settlement, Direction Regarding Notice to the Class, and the Scheduling of a Final Fairness Hearing. (Doc. 47.) The Court provisionally certified the Class for settlement purposes (Doc. 47 at 3-8), appointed Sarah Geraghty and Gerry Weber as Class Counsel (Doc. 47 at 8-10), approved a procedure for giving notice to the Class (Doc. 47 at 16-18), and set a final fairness hearing for September 15, 2015 (Doc. 47 at 19). The Court made preliminary findings that the Settlement Agreement was fair, reasonable, and adequate, and that it satisfied Rule 23 of the Federal Rules of Civil Procedure. (Doc. 47 at 8-16.)

3. The Class preliminarily certified by the Court consisted of each individual who met the following criteria: (a) the individual had a criminal case pending in the State Court of Grady County; (b) on or after September 24, 2011, Judge Bass entered an order in the individual's criminal case that required the individual to pay Administrative Costs; and (c) the individual paid some or all of the Administrative Costs ordered by Judge Bass. (Doc. 47 at 8.)

4. The Court directed that members of the Class would be notified of the Settlement Agreement in the following manner: (a) within 30 days of the entry of the preliminary order, Grady County would publish the Advertisement approved by the Court (Doc. 44-2 at 9-14) in the Cairo Messenger once a week for two weeks; (b) on or before the date on which the Advertisement was first published in the newspaper, Grady County would mail a Notice approved by the Court (Doc. 46-1) to the individuals identified on the list attached as Exhibit C to the Settlement Agreement (Doc. 44-2 at 17-27), who were believed to be the members of the Class. The Court further directed that (1) the Notice would be mailed to the most recent address included in the file maintained by the Clerk of the State Court of Grady County with respect to

each Class member's criminal case; (2) if the Notice that was originally mailed was returned to Grady County with a forwarding address, Grady County would mail a second Notice to the forwarding address; and (3) Grady County would inform the attorneys representing the Class of each Notice that was returned as undeliverable so that the attorneys for the Class would have an opportunity to identify a current address for each such Class member. If the attorneys for the Class identified a more current address, they were to provide that address to Grady County and Grady County was to mail another Notice to that address within five days of receipt of that address. (Doc. 47 at 16-17.)

5. The Advertisement was published in the Cairo Messenger newspaper on April 8, 2015, *see Advertisement I*, Cairo Messenger, April 8, 2015, at B9, and on April 15, 2015, *see Advertisement II*, Cairo Messenger, April 15, 2015, at C8.

6. The deadline for filing Class Member requests for payment under the Settlement Agreement, requests for exclusion from the Settlement Agreement, objections to the terms of the Settlement Agreement, or intervention in the lawsuit was 90 days from the date of the first publication of the Advertisement. (Doc. 47 at 18.) Because the first publication occurred on April 8, 2015, the deadline for requests for payment, requests for exclusion, objections, or intervention passed on Tuesday, July 7, 2015.

7. The Notice was sent to the individual Class Members' last known addresses in accordance with the Court's directive. Out of 462 total Class Members, 109 Class Members requested payment under the Settlement Agreement, which equates to a response rate of approximately 23 percent. Class Counsel advised the Court that there was no practicable alternative to direct mailing of the Notice and publication of the Advertisement.

8.  The Court previously found that these notice procedures were reasonably calculated to apprise Class Members of the pendency of the action and afford them an opportunity to present their claims, requests for exclusion, or objections. (Doc. 47 at 18.) Upon consideration of the circumstances of this case, the Court hereby reaffirms that finding and finds the notice given in this case is reasonable and adequate.

9.  The Court finds that notice was directed to all Class Members as set out above. *See* Fed. R. Civ. P. 23(c)(3)(B). No parties have intervened and the Court is not aware of any objections to or requests for exclusion from the Settlement Agreement.

10. For the reasons set out in the Court's preliminary order (Doc. 47), the Court finds that the Class satisfies the numerosity, commonality, typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a). The Court also finds that issues of law and fact common to the members of the Class predominate, and, in these circumstances, a class action is a superior method for resolving the disputed claims, satisfying Rule 23(b)(3).

11. For the reasons set out in the Court's preliminary order (Doc. 47), the Court finds that Sarah Geraghty, Gerry Weber, and the Southern Center for Human Rights are adequate class counsel under Rule 23(g) of the Federal Rules of Civil Procedure.

12. Based on the submissions of the parties and the representations presented at the fairness hearing, the Court hereby ORDERS as follows:

## III. FINAL APPROVAL OF THE SETTLEMENT

The claims of a certified class may be settled only with the court's approval. Fed. R. Civ. P. 23(e). In considering whether a settlement of a class action should be approved, the Court must determine whether the proposed settlement is fair, reasonable, adequate and free of

collusion. Fed. R. Civ. P. 23(e)(2); *Day v. Persels & Assoc., LLC*, 729 F.3d 1309, 1326 (11th Cir. 2013); *Columbus Drywall & Insulation, Inc.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007).

The Eleventh Circuit has identified six factors that a court should consider when determining whether a class action settlement is fair, adequate, and reasonable. *Day*, 729 F.3d at 1326; *In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991). The factors are: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the state of the proceedings at which the settlement was achieved. *Id.* In addition, this Court has suggested consideration of additional factors, including: (7) the terms of the settlement; (8) the procedures afforded to notify class members of the proposed settlement and to allow them to present their views; and (9) the judgment of experienced counsel. *Meyer v. Citizens & S. Nat'l Bank*, 677 F. Supp. 1196, 1201 (M.D. Ga. 1998).

There is a strong judicial policy favoring settlement. *Meyer*, 677 F. Supp. at 1200. After considering all of these factors, as set forth below, the Court concludes that the settlement is fair, adequate, and reasonable, was reached without collusion, and should be approved.

### A.   Fairness, Adequacy and Reasonableness

#### 1.   The likelihood of success at trial

Plaintiff claims that Judge Bass violated her rights under the U.S. Constitution and the Constitution and laws of the State of Georgia by imposing Administrative Costs upon her after she pleaded guilty to a crime, and she further contends that Grady County violated her rights by receiving and retaining the funds that were paid in connection with the imposition of those costs. Because all of the members of the class paid Administrative Costs after pleading guilty to a

crime, and because there is no indication that those convictions have been overturned, Judge Bass and Grady County argued that the claims asserted against them by Plaintiff (and the Class) are barred by the favorable termination requirement established in *Heck v. Humphrey*, 512 U.S. 477 (1994). In addition, Judge Bass argued that the claims asserted against him are barred by the doctrine of judicial immunity and Grady County has argued that it cannot be held liable pursuant to 42 U.S.C. § 1983 for the actions of Judge Bass. For those reasons, it is not certain that Plaintiff (or the Class) would be successful at trial.

### 2. The range of possible recovery at which settlement is fair, adequate and reasonable

"In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *Columbus Drywall*, 258 F.R.D. at 559. As such, it is necessary to examine the benefit that each member of the Class will receive pursuant to the Settlement Agreement. Each member of the Class has been adjudicated guilty of a misdemeanor in the State Court of Grady County, and each member of the Class has paid Administrative Costs as a result. Judge Bass assessed Administrative Costs ranging from $25.00 to $2,000.00.[1] According to the calculations performed by Plaintiff's attorneys, the average amount of Administrative Costs assessed to class members was $613.00. Pursuant to the terms of the Settlement Agreement, each member of the Class who submitted a claim form will receive a payment of $100.00 as compensatory damages. In addition, the Administrative Costs paid by each one of those class members will be refunded, up to $700.00. For example, pursuant to the terms of the Settlement Agreement, an individual

---

[1] Persons who were assessed Administrative Costs but did not pay any Administrative Costs are not members of the Class.

who paid $500.00 in Administrative Costs will received a payment of $600.00 (a payment of $100.00 in compensatory damages plus a refund of $500.00). On the other hand, a person who paid $1,500.00 in Administrative Costs will receive a payment of $800.00 (a payment of $100.00 in compensatory damages plus a refund of $700.00).[2] Given the uncertainties discussed in the preceding section, the proposed settlement is within the range of possible recovery. *Id.*

### 3.  The point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable

To determine whether a proposed settlement falls within the range of reasonableness, a Court must consider the value to the Class. *Id.* In order to do so, it is necessary to consider the terms of the proposed settlement agreement. In this case, the Settlement Agreement will result in a number of members of the Class receiving a payment in excess of the amount of money that they paid in Administrative Costs while a small number of class members may receive less money than they paid in Administrative Costs. For instance, using the previous examples, a Class member who paid $500.00 in Administrative Costs will receive $600.00, whereas a person who paid $1,500.00 in Administrative Costs will receive $800.00. Thus, the proposed recovery ranges from more than 100 percent of the Administrative Costs paid by some class members to approximately 53 percent of the amount paid by other class members. Under the Settlement Agreement, the vast majority of Class members will get back all the money they paid in Administrative Costs, plus $100. Only 27 Class members out of 400 will not receive the full amount they paid in Administrative Costs, but even they are eligible to receive $800. The Parties submit that the range of recovery afforded by the Settlement Agreement compares favorably to other settlements that have received court approval. For instance, the Court in *Columbus*

---

[2] According to the analysis conducted by Jones's attorneys, only 27 Class members were assessed more than $800.00 in Administrative Costs. Of those, 12 Class members were assessed $850.00; 2 Class members were assessed $1,000.00; 1 Class member was assessed $1,067; 2 Class members were assessed $1,250.00; 9 Class members were assessed $1,500.00; and 1 Class member was assessed $2,000.00 in Administrative Costs.

9

*Drywall* noted that, in antitrust actions, "district courts have approved settlements equaling a small fraction of the potential recovery . . . ." *Id.*; see *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving a comprehensive settlement equal to 12.7 to 15.3 percent of the potential recovery); and *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, *6 (S.D. N.Y. 2006) (approving settlement of "roughly 10-15%" of the allegedly illegal fees collected from the class.) Based on the foregoing, the amount of the payments called for by the Settlement Agreement is fair, adequate and reasonable.

### 4. The complexity, expense and duration of litigation

Because they believe that they have legal defenses to Plaintiff's claims, Judge Bass and Grady County filed motions to dismiss Plaintiff's complaint. On August 13, 2014, the Court entered an order denying those motions to dismiss. By that point, the Parties were familiar with the facts and legal issues necessary to evaluate the claims, defenses and potential recoveries. For instance, Plaintiff's attorneys were able to provide information regarding the identity of the members of the Class and the amount of money that each Class member paid in Administrative Costs. Because the facts and issues were apparent, the Parties attended mediation on October 9, 2014, and the negotiations that took place at the mediation resulted in the Agreement. By entering into this negotiated resolution of the case, the parties avoid the time and expense of further, protracted litigation, including discovery, a potential interlocutory appeal, trial, and final appeal. The Settlement Agreement avoids the potential costs of continued litigation for the Class and the Defendants.

### 5. Substance and degree of opposition to the settlement

The Court is not aware of any objections to the terms of the Settlement Agreement. "It is established that the absence of a large number of objections to a proposed class action settlement

raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases). Therefore, this factor weighs in favor of approving the settlement reached in this case.

### 6. The stage of proceedings at which the settlement was achieved

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. American Express Co.*, 406 F. Supp.2d 1298, 1324 (S.D. Fla. 2005). Here, although no discovery took place, the Plaintiff had access to court records and other public records that allowed Plaintiff to evaluate the merits of her case. The Parties agree on the basic facts and they are set forth in the Settlement Agreement. In addition, the Parties are familiar with the relevant legal issues as those issues were raised in the Defendants' motions to dismiss. Settlement was achieved in good faith following a formal mediation and after this Court ruled on Defendants' motions to dismiss.

### 7. Terms of the settlement

The Court has reviewed the Settlement Agreement and described its pertinent terms in Section III(A)(2) and (3) above. Under the Settlement Agreement, all Class members will be entitled to monetary compensation. Most class members will be entitled to receive back all of the money they paid in Administrative Costs, plus $100. Only about 14 percent of Class members will receive less than what they may have paid in Administrative Costs, but even they will be entitled to receive up to $800. The Court finds that these settlement terms are fair and reasonable.

### 8. Procedures to notify class members of the proposed settlement

Rule 23(e) of the Federal Rules of Civil Procedure specifies that, "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–812 (1985). Further, pursuant to Fed. R. Civ. P. 23(h)(1), Class counsel must also notify class members in a reasonable manner of any motion for attorney fees and costs.

For the reasons set forth in the Court's preliminary order (Doc. 47 at 16-18), the procedures approved for providing notice to the Class complied with Rule 23[3] and the requirements of due process, as the procedures were reasonably calculated to apprise Class Members of the pendency of the action, inform them of their rights under the Settlement Agreement, and afford them an opportunity to present their views. The Court finds that Counsel for the parties complied with the Court's directives concerning notice and that no practicable alternative to those procedures exists given the distribution of Class Members around the State of Georgia and elsewhere.

Although the response rate is approximately 23 percent, a low response rate does not necessarily indicate inadequate notice or unfair settlement terms. *See Hall v. Bank of America, N.A.*, No. 1:12-CV-22700-FAM, 2014 WL 7184039, at *8 (S.D. Fla. Dec. 17, 2014) ("Provided that notice is adequate, the relief made available to class members is fair, and the settlement is

---

[3] The parties revised the Notice to comply with Fed. R. Civ. P. 23(h)(1) (requiring Class counsel to notify class members of their request for attorneys fees and costs). The Court notes that fees may be assessed against government officials after a case has been settled by the entry of a consent decree. *Evans v. Jeff D.*, 475 U.S. 717, 720 (1986) (citing *Maher v. Gagne*, 448 U.S. 122 (1980)). *See also* Fed. R. Civ. P. 23(h)(1) (stating that a court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

otherwise fair and reasonable, the number of claims submitted at any particular time is not a relevant factor in evaluating the fairness, reasonableness, or adequacy of the settlement."); *see, e.g., Date v. Sony Electronics, Inc.*, No. 07-CV-15474, 2013 WL 3945981, at *9 (E.D. Mich. July 31, 2013) (noting "many factors affect response rates" and that a response ratio of 6,594 out of 45,000 notices sent, or about 13 percent, "should not be given great significance"); *White v. Experian Info. Solutions, Inc.*, 803 F.Supp.2d 1086, 1100 (C.D. Cal. 2011) (noting an "underwhelming [5%] response rate does not mean that the Settlement, on the whole, is not fair, reasonable and adequate"); *Touhey v. United States*, No. 08-CV-01418-VAP, 2011 WL 3179036, at *7 (C.D. Cal. July 25, 2011) (granting final approval in settlement where only 38 claims forms were received out of 1,875 notices mailed to the last known addresses of class members, equating to a response rate of about 2 percent); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (granting final approval to class settlement where class constituencies' response rates were 6.9 percent and 9 percent). It is established that "many factors contribute to the claims response rate" and that "the adequacy of notice is measured by whether notice reached Class Members and gave them an opportunity to participate, not by actual participation." *In re Serzone Products Liability Litig.*, 231 F.R.D. 221, 235-36 (S.D.W.Va. 2005).

For these reasons, the Court reaffirms its prior finding that the notice procedure established by the Court constitutes the best notice practicable under the circumstances. Having found that the parties complied with the Court's directives in that regard, the Court finds that the Class Members were given sufficient notice of the terms of the Settlement Agreement and their rights to submit claims, request exclusion, or object to the terms of the Settlement Agreement.

### 9. Judgment of experienced counsel

In considering whether to approve the settlement, this Court is entitled to rely upon the judgment of experienced counsel for the parties. *Meyer*, 677 F. Supp. at 1210. "Indeed the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* (internal quotations and citation omitted). Here, counsel for the Parties are competent and experienced and have recommended that the Court approve the settlement.

### B. Absence of Collusion

There is no evidence in the record before the Court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the parties or their attorneys in arriving at the terms of the Settlement Agreement. On the contrary, the attorneys for the respective parties have vigorously advanced the interests of their respective clients. The Defendants filed motions to dismiss this case, Plaintiff contested those motions, and the Court permitted certain claims to go forward. Defendants then sought reconsideration of the Court's order. A settlement was reached only after an arms-length negotiation before a mediator. Therefore, the Court finds that the settlement was negotiated without any fraud or collusion. *Meyer*, 677 F. Supp. at 1201.

After considering the factors listed above, the Court hereby GRANTS final approval of the settlement outlined in the Settlement Agreement.

## IV. FINAL ORDER ON SETTLEMENT

For the reasons set forth herein, the Court hereby GRANTS final approval to the Settlement Agreement and ORDERS as follows:

    1. Within 30 days of entry of this Order, a check for the Total Settlement Amount (as that term was defined in the Settlement Agreement, Doc. 44-2

at 5) shall be mailed to the attorneys for the Class and the check, which will be made payable to the attorneys for the Class, shall be deposited in their trust account;

2. Within 15 days of their receipt of the check for the Total Settlement Amount, the attorneys for the Class shall mail a check for the Individual Payment Amount to each member of the Class who is entitled to payment;

3. Within 30 days of entry of this Order, Defendants shall remit attorney's fees to attorneys for the Class in accordance with this Court's Order granting attorney's fees (Doc. 56), as amended on September 17, 2015 (Doc. 58);

4. Members of the Class are barred from asserting any further claim or lawsuit against Judge Bass, Grady County, and their respective agents, officers, employees, elected and appointed officials, and personal representatives with respect to the imposition, receipt or retention of Administrative Costs; and

5. This case is hereby dismissed with prejudice.

This /3th day of October, 2015.

_____
W. Louis Sands, Sr. Judge
United States District Court

CONSENT TO BY:

s/ Sarah Geraghty
Sarah Geraghty
Georgia Bar No. 291393
SOUTHERN CENTER FOR HUMAN RIGHTS

15

83 Poplar Street, N.W.
Atlanta, GA 30303
Telephone: (404) 688-1202
Email: sgeraghty@schr.org
Attorney for Roberta Imogene Jones

s/ James L. Elliott
James L. Elliott
Georgia Bar No. 244244
ELLIOTT, BLACKBURN & GOODING, PC
3016 North Patterson Street
Valdosta, GA 31602
Telephone: (229) 242-3333
Email: jelliott@ebbglaw.com
Attorney for J. William Bass, Sr.

s/ Raleigh W. Rollins
Raleigh W. Rollins
Georgia Bar No. 613860
ALEXANDER & VANN, LLP
411 Gordon Avenue
Thomasville, GA 31792
Telephone: (229) 226-2565
Email: rrollins@alexandervann.com
Attorney for Grady County, Georgia